NOT YET SCHEDULED FOR ORAL ARGUMENT

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE, ET AL.,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE M. ZELDIN, Administrator, United States Environmental Protection Agency,<br><br>Respondents. | No. 25-106<br>Consolidated with<br>No. 25-1478<br>No. 25-1493 |

## PETITIONERS' JOINT RESPONSE TO EPA'S MOTION TO DISMISS

Petitioners in these consolidated cases agree with EPA that their petitions for review of EPA's preemption waiver entitled "California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision," 90 Fed. Reg. 642 (Jan. 6, 2025) (the "ACC II Waiver"), are now moot due to recently enacted legislation declaring that the waiver "shall have no force or effect," Pub. L. No. 119-16, 139 Stat. 66 (2025). As the Supreme Court recently noted, this "legislation … block[s] … [the] California regulations" for which EPA granted the waiver challenged here. *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025). This

legislation thus provides Petitioners all the relief they seek, leaving no injury to redress in this litigation. On that basis, Petitioners agree their petitions for review must be dismissed as moot.[1] Petitioners submit this joint response to address three points related to EPA's motion to dismiss, Dkt. 22.1.

*First*, as EPA argued, the Court should grant the motion to intervene filed in January by California and a collection of States and cities (collectively, the "Movant-Intervenors"). *See* Dkt. 8. Ten of the Movant-Intervenors, including California, are currently plaintiffs in a later-filed action pending in the Northern District of California challenging the validity of the statute nullifying the preemption waiver at issue here. *See* Complaint ("Compl."), *California v. United States*, No.

---

[1] Although Petitioners agree with EPA that the ACC II Waiver is moot, Petitioners are not voluntarily dismissing their petitions for review, and their agreement with EPA regarding mootness does not constitute a voluntary dismissal under Federal Rule of Appellate Procedure 42. *See* Fed. R. App. P. 42(b). Furthermore, Petitioners reserve all rights to seek review of the ACC II Waiver in the event that these cases are dismissed and a court subsequently invalidates the joint resolution. *See* 42 U.S.C. § 7607(b) (permitting parties to seek review of EPA actions more than 60 days from promulgation based on "grounds arising after" the 60-day period); *see also Meyers v. Birdsong*, 83 F.4th 1157, 1159 (9th Cir. 2023) (recognizing this Court's inherent power to recall its mandate "in exceptional circumstances, for good cause or to prevent injustice" (cleaned up)).

25-cv-4966, Dkt. 1 (N.D. Cal. June 12, 2025). Permitting the Movant-Intervenors to intervene will allow them to raise any such challenges to the validity of that statute here, consistent with the Clean Air Act's requirement that the courts of appeals decide in the first instance the validity of preemption waivers. *See* 42 U.S.C. § 7607(b). In addition, the Movant-Intervenors' participation will conserve both judicial and party resources by permitting this Court to directly resolve Movant-Intervenors' challenges to the statute nullifying the waiver, rather than awaiting the inevitable appeal of any district court decision. *Cf. Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*, 764 F.2d 896, 903 (D.C. Cir. 1985) (noting that "in administrative appeals, where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter" to "avoid[] duplicative review and the attendant delay and expense involved" (cleaned up)).

**Second**, none of California's likely challenges undermines the conclusion that these cases are moot. Acting under the Congressional Review Act ("CRA"), bipartisan majorities of both Houses of Congress passed, and the President signed, the joint resolution declaring that the

3

ACC II Waiver "shall have no force or effect." Pub. L. No. 119-16. This joint resolution thus "complied with the process of bicameralism and presentment," "amended the substantive environmental law[,] and deprived the [ACC II Waiver] of any force or effect." *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019). "Indeed, the President now has the constitutional obligation to execute the [j]oint [r]esolution," *id.*—including by asking the Court to dismiss the petitions for review of the ACC II Waiver as moot.

This duly enacted law—Pub. L. No. 119-16—invalidates the ACC II Waiver and thereby moots these cases. As the Supreme Court recently explained in a case decided after California filed its challenge, this "legislation" disapproves the waiver and thus "block[s]" the underlying California regulations. *Diamond Alt. Energy*, 145 S. Ct. at 2131 n.1. The various attacks California has advanced in district court on the *process* preceding the law's enactment have no bearing on the question of mootness. For instance, California has claimed that EPA improperly submitted the ACC II Waiver to Congress as a "rule" under the Congressional Review Act. *See* Compl. ¶¶ 116–20, 126–33, 139, 146–48. But even assuming that EPA's submission was improper, it would not

4

alter the fact that Congress has enacted a binding statute nullifying the waiver. That statute has the full force of law and reflects the independent and constitutionally grounded decisions of both Houses of Congress and the President under Article I procedures. And it is that statute that moots this case, not EPA's transmission of the waiver.

California's anticipated challenges to Congress's internal procedures fare no better. California has argued that Congress improperly (i) ignored the advice of the Government Accountability Office and the Senate Parliamentarian regarding whether the ACC II Waiver constitutes a "rule," Compl. ¶¶ 140, 172, 175; (ii) accepted EPA's characterization of the waiver as a "rule," *id.* ¶¶ 158–63; (iii) applied the CRA's expedited procedures to the joint resolution, *id.* ¶¶ 141, 172–76; and (iv) limited California's participation in Congress's legislative process, *id.* ¶¶ 37–38, 173, 175. But the Constitution squarely commits to each House the discretion to select the procedural rules it applies to pending legislation. U.S. Const. art. I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings."). Thus, determining whether to apply the CRA's "accelerated procedure is 'an exercise of the rulemaking power of the Senate and House of Representatives, respectively.'" *Ctr. for*

5

*Biological Diversity*, 946 F.3d at 557 (quoting 5 U.S.C. § 802(g)). And as this Court has explained, a challenge "based on the asserted failure of Congress to comply with its own procedural rules" is a nonjusticiable "political question" that is "beyond [this Court's] power to review." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171–72 (9th Cir. 2007) (declining to review claim that Congress, by not holding a hearing on legislation, failed to comply with its own procedural rules); *see also Baker v. Carr*, 369 U.S. 186, 217 (1962) (explaining that a claim presents a nonjusticiable political question when there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department").

***Third***, even if California's likely challenges had any bearing on whether these cases are moot, those challenges are nonjusticiable or otherwise meritless. Section 805 of the CRA states: "No determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Yet all of the actions that California has challenged in the district court—by EPA, by Congress, and by the President—were taken "under" the CRA and so fall squarely within Section 805's prohibition. The CRA requires federal agencies to "submit

6

to each House of the Congress and to the Comptroller General a report"
for each "rule," which includes "a concise general statement relating to
the rule." 5 U.S.C. § 801(a)(1)(A). That submission necessarily requires
agencies to determine what actions are "rules" under the CRA. *See id.*
§ 804(3). The CRA then provides procedures for consideration of joint
resolutions disapproving of rules, *id.* § 802, which necessarily requires
that Congress determine a resolution is eligible for those procedures. And
the CRA provides that a joint resolution adopted by Congress and signed
by the President has the result that the "rule shall not take effect (or
continue)." *Id.* § 801(b)(1).

California has attacked EPA's, Congress's, and the President's
actions at each step of this process. It has challenged EPA's treatment of
the ACC II Waiver as a rule and its decision to send the waiver to
Congress; Congress's decision to take up the waiver under the CRA's
expedited procedures; and Congress's adoption and the President's
signing of the joint resolution. *See supra* at 5. But each of these challenges
involves a "determination, finding, action, or omission *under* [the CRA],"
5 U.S.C. § 805 (emphasis added), and is therefore excluded from judicial
review. *See Ctr. for Biological Diversity*, 946 F.3d at 563 (holding that "a

7

joint resolution of disapproval is an action under the CRA"); *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1235–36 (10th Cir. 2020) ("[T]he CRA unambiguously prohibits judicial review of any omission by any of the specified actors," which includes "agencies, the Comptroller General, the President, and Congress."). Thus, under the plain text of the CRA, California's claims are nonjusticiable and so irrelevant to the mootness analysis.

Furthermore, to the extent the CRA does not bar judicial review of California's constitutional claims, *see Ctr. for Biological Diversity*, 946 F.3d at 561, those claims are utterly meritless.

The claim that EPA and the President violated the Take Care Clause by classifying the ACC II Waiver as a rule, *see* Compl. ¶¶ 144–50, is merely an improper attempt to convert an alleged statutory violation into a constitutional violation, *see Dalton v. Specter*, 511 U.S. 462, 472 (1994), and in any event is nonjusticiable, *see Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1867) ("[T]he duty of the President in the exercise of the power to see that the laws are faithfully executed" "is purely executive and political," and is therefore not an appropriate subject for judicial intervention.).

8

Similarly, the claim that the joint resolution unlawfully delegated Congress's power to determine its own rules of proceeding to the Executive Branch, *see* Compl. ¶¶ 153–63, ignores that Congress did not delegate any power to the Executive Branch but rather exercised its Article I powers to enact a law. Nor did the joint resolution invade the judiciary's Article III authority to interpret the term "rule," *see id.* ¶¶ 164–66, because Congress has full authority to override agency actions by statute, even if doing so affects the outcome of pending litigation, *see Bank Markazi v. Peterson*, 578 U.S. 212, 225–26 & n.17 (2016). This is because the resolution "compelled changes in law, not findings or results under old law." *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992). The resolution is thus "enforceable as a change to substantive law." *Ctr. for Biological Diversity*, 946 F.3d at 562.

Finally, the claim that the joint resolution violates principles of federalism, *see* Compl. ¶¶ 171–76, presumes a nonexistent right to a Senate filibuster. The claim also ignores that Congress struck down a federal agency action (*i.e.*, the ACC II Waiver)*, not* a state law, and that, in any event, California has no constitutional right to enforce its own motor vehicle emission program that conflicts with federal law. U.S.

9

Const. art. VI, cl. 2 ("the Laws of the United States" are "the supreme Law of the Land" and are binding in every State, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding"); 42 U.S.C. § 7543(a) (prohibiting state emission standards).

## CONCLUSION

For the foregoing reasons, the Court should grant EPA's motion to dismiss these consolidated petitions for review as moot in a published order.

Dated: August 25, 2025        Respectfully submitted,

*/s/ Daniel J. Feith*
Carter G. Phillips
Daniel J. Feith
Kathleen M. Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
cphillips@sidley.com
dfeith@sidley.com
kmueller@sidley.com

*Counsel for American Fuel & Petrochemical Manufacturers, Energy Marketers of America, and National Association of Convenience Stores*

*/s/ Paul D. Clement*
Paul D. Clement
C. Harker Rhodes IV

Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com
nicholas.aquart@clementmurphy.com

*Counsel for American Petroleum Institute*

*/s/ Michael Buschbacher*
Michael Buschbacher
James R. Conde
BOYDEN GRAY PLLC
800 Connecticut Ave.
Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com

*Counsel for American Free Enterprise Chamber of Commerce*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(a) as, excluding the portions of the document exempted by Fed. R. App. P. 32(f), this document contains 1,870 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14 point font.

*/s/ Daniel J. Feith*
Daniel J. Feith

*Counsel for American Fuel &*
*Petrochemical Manufacturers,*
*Energy Marketers of America,*
*and National Association of*
*Convenience Stores*

12

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on August 25, 2025.

*/s/ Daniel J. Feith*

Daniel J. Feith

*Counsel for American Fuel &*
*Petrochemical Manufacturers,*
*Energy Marketers of America,*
*and National Association of*
*Convenience Stores*

13