NOT YET SCHEDULED FOR ORAL ARGUMENT

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE, ET AL., <br><br> Petitioners, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, <br><br> Respondent, <br><br> STATE OF CALIFORNIA, ET AL., <br><br> Movant Respondent-Intervenors. | No. 25-106 <br> Consolidated with <br> No. 25-1478 <br> No. 25-1493 |

## PETITIONERS' JOINT RESPONSE TO
## STATE MOVANT-INTERVENORS'
## CROSS-MOTION FOR ABEYANCE

## INTRODUCTION

The cross-motion for abeyance and response of State Movant-Intervenors, led by California, is heavy on rhetoric but short on law. California resists the straightforward question of mootness by repeatedly characterizing the joint resolution invalidating the EPA preemption waiver at issue here as raising "novel," "serious," and "complex" questions of law that should be addressed in the first instance by the district court in the lawsuit brought by California. *See* Dkt. 44.1, at 1, 2, 13, 15, 19, 20, 24. But California's threadbare arguments reveal its objections are neither novel, nor serious, nor complex. The joint resolution was passed by Congress and signed into law by the President. As Petitioners have already explained, California's challenges to the resolution are barred by the jurisdiction-stripping provision of the Congressional Review Act ("CRA") or the political question doctrine, foreclosed by precedent from this Court and the Supreme Court, or plainly meritless. Dkt. 38.1, at 3–10. And apart from asserting a need for more words it never requested, California does not (and cannot) explain what prejudice it would suffer if this Court addresses its objections when ruling on EPA's motion.

Meanwhile, the delay California seeks is not harmless. Petitioners,

1

the United States, and the public suffer serious consequences every day that California continues to defy federal law and perpetuate baseless uncertainty about the enforceability of its regulations. As explained below, California's Air Resources Board ("CARB") has advised motor vehicle manufacturers that it reserves its right to enforce its regulations in the event a court finds the joint resolution invalid. And CARB has initiated an "emergency" rulemaking to codify this position in light of the "unprecedented degree of uncertainty" in California's new motor vehicle market. Ex. A, at 4 (Steven S. Cliff, *Executive Order R-25-002, Relating to Emergency Amendments to the Advanced Clean Cars II and Omnibus Regulation* (Sept. 15, 2025), https://perma.cc/7TWU-3HC5). That uncertainty is not limited to California; it extends across the nation, and harms Petitioners' members by creating confusion and unpredictability in the motor vehicle and fuel industries, delaying fuel sales, raising the costs of vehicles with internal-combustion engines, and disrupting investment planning.

A ruling by this Court dismissing the petitions because the joint resolution has deprived EPA's waiver of any force or effect will end the uncertainty and make clear that California's standards are preempted by

federal law. Instead of allowing these petitions to languish for months or years, this Court should promptly resolve the purely legal questions raised by EPA's motion to dismiss and address California's objections. Resolving this case here and now would promote judicial economy and provide much-needed legal clarity for some of the most important American industries and for California, itself.

Federal courts have an "inflexible" judicial duty to dismiss cases when they lack subject matter jurisdiction to hear them. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Indeed, "[w]ithout jurisdiction the court cannot proceed *at all* in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, *the only* function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)) (emphases added). The Court should therefore deny California's motion for abeyance and dismiss these petitions as moot because EPA's preemption waiver has been invalidated by a legislative act of Congress signed by the President. In the alternative, if the Court believes full briefing and oral argument is warranted, any such briefing and argument should be

3

limited to California's arguments opposing the motion to dismiss and should be expedited.

## ARGUMENT

California claims that deciding the issue of mootness properly before this Court would "leapfrog[]" and "short-circuit" later-filed district court litigation. Dkt. 44.1, at 15, 20. That is wrong. "Holding … petitions in abeyance" to await *lower court* consideration of similar issues in *different* and later-filed actions is not the "ordinary course*." Id.* at 14. It is an unusual request that California, not the United States or Petitioners, bears the burden of justifying with compelling reasons. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)); *see also In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (identifying "three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay").

California has not justified its requested delay. It claims that abeyance "would promote judicial economy, facilitate the development of a record and reasoned decision for this Court's future review, and cause no hardship to any parties." *See* Dkt. 44.1, at 13. None of these claims is correct. California's request would not promote judicial economy, but

judicial waste. No further record development is necessary because California raises purely legal arguments, and those arguments are controlled by precedent and by legislation expressly stripping courts of jurisdiction over California's claims. And delaying a decision from this Court for many months or years would cause enormous hardship to Petitioners, the United States, and the American economy. Given this harm to others, California has not shown—as it must—"a clear case of hardship or inequity" if a stay is denied. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255). This Court should therefore deny California's motion for abeyance and promptly consider EPA's motion to dismiss.

## I. The Objections Raised by California Are Purely Legal and Resolved by Statute and Precedent

### A. California's Arguments Do Not Require Factual Development

California's repeated assertions that this Court would "benefit" from a "full record" developed by a district court, Dkt. 44.1, at 15; *see also id.* at 2, 14, 19, are belied by its conspicuous failure to identify even a single relevant, disputed material fact needed to resolve the question of mootness before this Court.

That failure is unsurprising: California's objections to mootness are purely legal and do not turn on any further factual development. The joint resolution mooted these consolidated cases by depriving the challenged EPA waiver of any legal force or effect. Dkt. 38.1, at 1. California may defeat mootness only if Congress's joint resolution is itself somehow unlawful, and so California attacks the *legality* of actions surrounding the resolution's enactment. California alleges that "the President and EPA lacked any authority"—under the Administrative Procedure Act, the CRA, and the Take Care Clause of the Constitution—to consider the waiver a "rule" and submit it to Congress under the CRA, Dkt. 44.1, at 9 (citing Dkt. 44.2[1] ¶¶ 114–152); that Congress's "use of an inapplicable statute" resulted in "'extraordinary defects in the national political process' that render the congressional resolutions 'invalid under the Tenth Amendment' and structural principles of federalism," *id.* (citing Dkt. 44.2 ¶¶ 171–176); that "Congress acted outside its powers" by using procedures outlined in the CRA to invalidate the waiver, *id.* (citing Dkt. 44.2 ¶¶ 164–166); and that "the Senate impermissibly delegated the power to

---

[1] Compl., *California v. United States*, No. 4:25-cv-04966 (N.D. Cal. June 12, 2025).

determine its own rules of procedure to the Executive Branch," *id.* at 10 (citing Dkt. 44.2 ¶¶ 157–162).

Crucially, there is no dispute that the President, EPA, and Congress took the actions alleged in the complaint. The dispute is whether those actions were illegal and rendered the joint resolution null and void. These are questions of law that can be resolved on the existing and undisputed record. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020). Because this is not a case where "more factual development is required" to assess the merits, *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003), there is no reason for this Court to defer its "virtually unflagging obligation to exercise [its] authority" to adjudicate EPA's motion to dismiss. *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (cleaned up).

## B. A District Court Opinion Is of Limited Value Because the Issues Are Addressed by Precedent

For similar reasons, this Court does not require (and would derive little benefit from) a "reasoned lower court opinion" in the pending district court cases. Dkt. 44.1, at 15. The legal issues raised by California's objections are not "novel and complex," as California claims. *Contra id.* at 1, 2, 13, 15, 19, 20, 22, 24. Instead, they are either foreclosed by unambiguous statutory text and binding precedent or so meritless that they

are easily dismissed. And because this Court owes no deference to a lower court's legal analysis, but "review[s] the district court's legal conclusions *de novo*," *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1212 (9th Cir. 2019), an additional district court decision addressing those issues would be of little benefit.

Congress's enactment of a joint resolution disapproving of an agency action is hardly "unprecedented." *Contra* Dkt. 44.1, at 1, 6, 9, 20, 23. On the contrary, Congress has repeatedly passed such resolutions. *See, e.g.*, S.J. Res. 6, 107th Cong., Pub. L. No. 107-5, 115 Stat. 7 (2001); H.R.J. Res. 69, 115th Cong., Pub. L. No. 115-20, 131 Stat. 86 (2017); H.R.J. Res. 111, 115th Cong., Pub. L. No. 115-74, 131 Stat. 1243 (2017); S.J. Res. 13, 117th Cong., Pub. L. No. 117-22, 135 Stat. 294 (2021); H.R.J. Res. 20, 119th Cong., Pub. L. No. 119-6, 139 Stat. 49 (2025). And the "plain language of [the CRA's jurisdictional bar] is clear." *Kan. Nat. Res. Coal. v. Dep't of Interior*, 971 F.3d 1222, 1236 (10th Cir. 2020). Prior joint resolutions have been challenged, including in the Ninth Circuit, and the CRA jurisdictional bar was raised as a defense. *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019). Other courts of appeals have also examined the CRA's judicial review provision, providing

ample precedent for this Court to resolve California's objections as a matter of law. *See, e.g., Kan. Nat. Res. Coal.*, 971 F.3d 1222; *Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332 (D.C. Cir. 2018); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225 (D.C. Cir. 2009) (Kavanaugh, J.).

Nor is California the first to claim that Congress has violated its internal rules and procedures, *see, e.g.*, *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1171–72 (9th Cir. 2007); that an action taken by a President pursuant to statute exceeds his constitutional authority, *Dalton v. Specter*, 511 U.S. 462, 474 (1994); or that the President hasn't faithfully performed his constitutional duties, *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499 (1866). As a result, there is a substantial body of case law squarely addressing California's arguments.[2]

Despite repeatedly asserting that its arguments are "novel" and "complex," California never attempts to explain why those arguments are

---

[2] *See also Baker v. Carr*, 369 U.S. 186, 209–36 (1962) (discussing justiciability under the "political question doctrine"); *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 438 (1992) (explaining that a statute "compel[s] changes in law, not findings or results under old law"); *Bank Markazi v. Peterson*, 578 U.S. 212, 225–26 n.17 (2016) (explaining that Congress may change the law applicable in a pending case).

not foreclosed by the cases discussed above and in Petitioners' Response to EPA's motion to dismiss, Dkt. 38.1, at 3–10. California's cross-motion and response does not mention *Consejo de Desarrollo Economico*, *Dalton*, or *Johnson*. And it cites *Center for Biological Diversity* twice, but only for ancillary issues. *See* Dkt. 44.1, at 17, 23.

In short, California's objections to EPA's claim of mootness raise legal questions that this Court can and should resolve on EPA's motion without awaiting a decision from the district court. There is therefore no reason for this Court to delay consideration of EPA's motion.

## II.   Abeyance Would Not Serve Judicial Economy

Abeyance also would not promote judicial economy. *Contra* Dkt. 44.1, at 13–17. As California observes, suits raising issues relating to the validity of this or similar joint resolutions are pending before two district courts in California. *Id.* at 8–10. Allowing multiple district courts to simultaneously consider claims over which they ultimately lack jurisdiction would plainly undermine judicial economy rather than promoting it. In the absence of an authoritative, binding decision from this Court, each district court must independently familiarize itself with all of the issues, consider briefing from a multitude of parties, and prepare

opinions addressing each argument raised, expending resources in juris-
dictions that are overwhelmed and even in "crisis." Magistrate Judge
Consent Form, *Daimler Truck N. Am. LLC v. Cliff*, No. 2:25-cv-02255
(E.D. Cal. Aug. 11, 2025), ECF 9-1, https://perma.cc/V3US-7JKY ("Delay,
congestion, uncertainty, and expense … have reached a crisis level in the
Eastern District of California.").

Because the district court suits are just getting started, a prompt
resolution from this Court on these dispositive issues would prevent "du-
plicative review and the attendant delay and expense involved" by
providing authoritative guidance that would simplify or streamline the
issues pending before these courts. *Gen. Elec. Uranium Mgmt. Corp. v.
U.S. Dep't of Energy*, 764 F.2d 896, 903 (D.C. Cir. 1985). It would also
save time "compared to review by a district court, followed by a second
review on appeal," a result the Clean Air Act was designed to prevent.
*Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593 (1980). This Court will
have to examine legal issues relating to the validity of the joint resolution
sooner or later, and its review will be *de novo*. It should examine those
issues here and now, where a prompt decision would conserve the re-
sources of backlogged district courts.

11

California's assertion that a decision from this Court might not resolve *all* of the issues in the pending district court suit is hardly a reason for this Court to delay consideration. *See* Dkt. 44.1, at 16. In any event, it is hard to see what would be left of California's district court suit if this Court holds these cases are moot. California argues that an order addressing "the validity of the congressional resolutions targeting the Advanced Clean Cars II waiver … and the Omnibus waiver … could not address the congressional resolution targeting the Advanced Clean Trucks waiver—which was never challenged in this circuit." *Id.* But this Court's legal reasoning as to the former would necessarily inform the district court's evaluation of the latter, particularly if the Court publishes an opinion as Petitioners request. *See Bucklew v. Precythe*, 587 U.S. 119, 136 (2019) ("[J]ust as binding as [a] holding is the reasoning underlying it."). And the fact that the "Advanced Clean Trucks" waiver was issued by EPA before the other waivers does not matter to the legal issues raised by California. California effectively concedes this point by pleading identical legal claims against all three joint resolutions in its district court complaint. *See, e.g.*, Dkt. 44.2 ¶¶ 114–188 (California's claims).

California's primary argument for delay is that waiting for a

decision from a district court may "sharpen and narrow the legal issues that must eventually be decided." Dkt. 44.1, at 14 (quoting *Green v. Dep't of Com.*, 618 F.2d 836, 842 (D.C. Cir. 1980)).[3] But because the issues here involve only questions of law, *see supra* Part I, any "narrowing" can be done just as effectively through briefing before this Court. Indeed, Congress has already expressed its judgment that the courts of appeals are the appropriate forum for adjudicating legal disputes related to the validity of Clean Air Act waivers of preemption, which is why these petitions were filed here in the first place. 42 U.S.C. § 7607(b). With the congressional resolutions, Congress has already awarded the relief sought here: the waiver "shall have no force or effect." H.R.J. Res. 88, Pub. L. No. 119-16, 139 Stat. 66 (2025). As the *amici* States note: what Congress can give, it can also take away. Dkt. 37.1, at 1. This Court should follow the law and decide that these cases are moot.

---

[3] California wrongly suggests that abeyance is "the more economical route" because Petitioners indicated that they may refile challenges to the waivers if a district court were to somehow revive the waivers after this Court dismisses the pending petitions as moot. Dkt. 44.1, at 17. But as California points out, a definitive ruling from this Court would be preclusive and binding and thus should be followed by the district court, which should make it impossible to revive the waivers.

## III. Prompt Resolution Is Necessary To Prevent Harm

"'[I]f there is even a fair possibility that the stay … will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112 (quoting *Landis*, 299 U.S. at 255). California claims that Petitioners, the United States, and the public are not prejudiced by allowing moot cases to languish on this Court's docket, perhaps for months if not years, without a final resolution from this Court. Dkt. 44.1, at 17–19. That is wrong. The balance of harms weighs heavily against abeyance.

California's only asserted harm is its supposed inability to explain its "novel," "complex," and "serious" legal theories challenging the congressional resolutions in the 5,600 words usually allowed in this Circuit for a response to a motion, 9th Cir. R. 27-1(1)(d), 32-3(2), instead of the 14,000 words usually allowed for a principal brief, 9th Cir. R. 32-1(a). But California could have sought more words for its response to EPA's motion so it could fully develop its arguments. *See* Fed. R. App. P. 27(d)(2) ("Except by the Court's permission …."). Instead of doing that, California filed a cross-motion for abeyance or full briefing before the merits panel.

California should not be rewarded because it failed to ask for the extra words it now says it needs.

On the other side of the balance, delaying a decision on mootness will work enormous prejudice to Petitioners, the United States, and the public. California is refusing to acknowledge three valid federal laws and is now threatening motor vehicle manufacturers that fail to follow its preempted and unfeasible state regulations, creating significant uncertainty and instability in the market for new motor vehicles and across the American economy.

CARB's recent "Manufacturers Advisory Correspondence" provides that "[m]anufacturers who seek certification through the alternative pathways … should be advised … that CARB *reserves its right to enforce the regulations covered by the waivers targeted by the congressional resolutions in the event a court of law holds those resolutions invalid*, including with respect to model years that such manufacturers ask CARB to certify under these alternative pathways." Ex. B, at 3 (emphasis added) (CARB Manufacturers Advisory Correspondence ECCD-2025-08 (Aug. 25, 2025)), https://perma.cc/K7RX-WLQK. "Whether CARB opts to pursue such enforcement would be decided if and when that question

becomes ripe." *Id*. CARB repeated that warning in a recent proposed "emergency" rulemaking that would codify the threat of retroactive enforcement. Ex. A, at 4–5. CARB claims as justification for the emergency rulemaking the "unprecedented degree of uncertainty [in] the California market for new motor vehicles" that exists "until a court resolves" questions surrounding the resolution. *Id.* at 4. *See also* CARB, *Emergency Amendment and Adoption of Vehicle Emissions Regulations* at 1–2 (Sept. 15, 2025), https://perma.cc/E8NV-2L7A.

In now asking this Court to delay ruling on whether the joint resolution invalidated EPA's waiver, California is seeking to lengthen the period of "uncertainty" and so extend the period of time in which manufacturers may be effectively forced to comply with its preempted regulations to avoid the risk of crushing penalties. *See* Cal. Health & Safety Code § 43154(a)(1). This Court should not exercise its discretion to hold cases in abeyance to reward this ploy.

California's defiance of federal supremacy harms Petitioners and their members, not merely motor vehicle manufacturers. Liquid fuels, after all, are the "target" of California's rules seeking to phase out gasoline and diesel engines. *Diamond Alt. Energy*, 145 S. Ct. at 2136–38. And

Petitioners are membership associations representing this targeted product. Petitioners have members across the entire liquid fuels supply chain. Their members include liquid fuel and fuel additive producers, refiners, distributors, and retailers operating throughout the United States. The uncertainty created by California's threats will impede their sales, undermine settled business expectations nationwide, disrupt investment planning, and introduce uncertainty into fuel markets. *See* Ex. C (Moody Decl., *California*, No. 4:25-cv-04966 (Aug. 6, 2025), ECF 61-1); Ex. D (Hupman Decl., *California*, No. 4:25-cv-04966 (Aug. 6, 2025), ECF 61-2); Ex. E (Kantor Decl., *California*, No. 4:25-cv-04966 (Aug. 6, 2025), ECF 61-3); Ex. F (Couser Decl., *California*, No. 4:25-cv-04966 (Aug. 4, 2025), ECF 49-2).

Other members of Petitioners operate, sell, or lease motor vehicles subject to the preempted regulations. The economic consequences for these members can be ruinous. The preempted regulations constrain the supply of internal-combustion vehicles and raise motor vehicle prices, driving up costs in a way that Petitioners members cannot fully pass on to their customers. Ex. G (DeMartini Declaration, *California*, No. 4:25-cv-04966 (Aug. 4, 2025), ECF 49-3). DeMartini RV, for example, is an RV

17

dealer that sold more than 500 RVs and earned some $75 million in sales revenue in 2023. *Id.* ¶ 4. California's preempted regulations "have already had effects" on its business, as motor vehicle manufacturers have virtually ceased supplying certain motor home chassis to California and have inflated prices, devastating its previously flourishing family business. *Id.* ¶¶ 16–17.

Beyond harms to Petitioners, California's unrealistic regulations are harming the American economy. California's "Advanced Clean Cars II" program, the subject of these petitions, has set a target of 35% battery-electric vehicles by model year 2026 (this year). Cal. Code Regs. tit. 13, § 1962.4(c)(1)(B). That target cannot be realistically met in California, let alone in the copycat states that considerably trail California in battery-electric vehicle adoption, without considerably depressing gasoline-vehicle sales. Ex. H (Alliance for Automotive Innovation Memo (Dec. 11, 2024), https://perma.cc/4GHP-RP2M). Meanwhile, California's preempted heavy-duty vehicle regulations have led to shortages and increased prices. New model year Class 4-8 motor vehicle registrations have plummeted in California. According to Daimler, new tractor cab registrations fell by 77% in California last year compared to the prior year,

a decline attributable to California's unfeasible and preempted regulations. Ex. I (Daimler Comments on Proposed Amendments to ACT Regulation and the Zero-Emission Powertrain Certification Test Procedure (July 14, 2025), https://perma.cc/563L-ZQ7E).

California's attempt to fault EPA and Petitioners for previously asking this Court to hold the cases in abeyance is misplaced. That brief abeyance served the entirely proper purpose of allowing the political branches time to act through the legislative process. But the situation has changed: Congress and the President *have* acted, mooting these petitions and making Petitioners' challenges to the waivers' validity under the Clean Air Act unnecessary.

## IV. Any Additional Briefing Should Be Expedited and Limited To Mootness

Petitioners do not believe that any additional briefing is needed for this Court to conclude that the petitions are moot. *Contra* Dkt. 44.1, at 19–24. Nonetheless, if this Court concludes additional briefing is warranted, Petitioners respectfully request that any such briefing be expedited and limited to the question of mootness raised in EPA's motion to dismiss. Petitioners do not oppose consolidating these petitions with those challenging the Omnibus regulations for briefing and argument on

19

mootness. *See id.* at 19 n.11 (suggesting consolidation with Omnibus petitions).

## CONCLUSION

For the foregoing reasons, the Court should deny California's cross-motion for abeyance.

Dated: September 18, 2025

Respectfully submitted,

/s/ James R. Conde

Michael Buschbacher
James R. Conde
Laura B. Ruppalt
Boyden Gray PLLC
800 Connecticut Ave.
Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
lruppalt@boydengray.com

*Counsel for Petitioner American Free Enterprise Chamber of Commerce*

/s/ Daniel J. Feith

Carter G. Phillips
Daniel J. Feith
Kathleen M. Mueller
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
cphillips@sidley.com
dfeith@sidley.com
kmueller@sidley.com

*Counsel for Petitioners American Fuel & Petrochemical Manufacturers, Energy Marketers of America, and National Association of Convenience Stores*

/s/ Paul D. Clement

Paul D. Clement
C. Harker Rhodes IV
Nicholas A. Aquart
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
harker.rhodes@clementmurphy.com
nicholas.aquart@clementmurphy.com

*Counsel for Petitioner American Petroleum Institute*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) and 9th Cir. R. 27-1(1)(d) and 32-3(2), as, excluding the portions of the document exempted by Fed. R. App. P. 32(f), this document contains 3,892 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14 point font.

*/s/ James R. Conde*
James R. Conde

*Counsel for Petitioner American Free Enterprise Chamber of Commerce*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on September 18, 2025.

*/s/ James R. Conde*
James R. Conde

*Counsel for Petitioner American Free Chamber of Commerce*